We're going to move to appeal numbers 24-2276, 24-2277, and 24-2278, United States v. Byars. And Mr. Byrd, we're going to move to you first for argument on behalf of the appellant. Thank you. May it please the court, your honors, counsel, good morning. My name is Mark Byrd and I represent within guidelines sentence for numerous violations of 18 United States Code Section 1951A, which were essentially armed robberies under the Hobbs Act. His within guidelines sentence at the age of 25 or 26 was 300 months. That sentence was imposed by Judge Reinhardt consecutive to a Cook County sentence that he was on discharge for 13 years, meaning in effect the two sentences grafted together puts Mr. Byars, should he survive, out somewhere near the age in his late 50s or early 60s. It's my position that the district court abused its discretion in imposing a within guidelines sentence in that amount given the nature and circumstances of the defendant's upbringing and the fact that he has been tested with an IQ of 48. I believe that notwithstanding the fact that it is a presumptively reasonable sentence, digging into the defendant's background and looking at the way the district court evaluated the 3553 factors merits review of that sentence, even though it is presumptively reasonable and I believe that it is unreasonable as a violation of the parsimony provision of Section 3553A in that it constitutes a sentence that's sufficient and greater than necessary, not sufficient, but greater than necessary to achieve the 3553A goals. The defendant, as I pointed out, committed these offenses in his early 20s and there were a lot of them. They were graphic. They were violent. Fortunately, nobody was seriously injured in any of them. I believe there were eight total. There were several co-defendants that are not similarly situated to the extent that they don't have the same number of offenses that Jonathan did, but they were right there with him involved in various of the eight, one of whom, Caleb Morales, also was serving a similar undischarged sentence out of Cook County for 13 years. In looking at the materials that I provided in the appendix at A13 through A18, those are the defendant's records from Hartgrove Mental Health Hospital. It shows that he was provided the Weschler Intelligence skill for children and was diagnosed with the IQ of 48, which constitutes moderate mental retardation under the vernacular used at that time. Today we call it moderate cognitive impairment, but nevertheless, the IQ of 48. In looking at the intellectual functioning that is contained at A15 of the appendix, it shows that his verbal comprehension is extremely low. His perceptual reasoning, extremely low. His working memory, extremely low. His processing speed, extremely low. And his full scale IQ, again, 48, which is extremely low. Although it dealt with this in the context of death penalty cases, the case of United States v. Adkins, I believe, lends support to my position in terms of evaluating, in terms of the death penalty. The Adkins case held that it's unconstitutional violation of the Eighth Amendment to execute those people who have been diagnosed with retardation. While it limited itself to death penalty cases, the principles that emanate from Adkins and its discussion of mental retardation in defendants would apply with equal force in this case. And essentially, from the very first paragraph of that opinion, it indicates that, if I can have one moment, those mentally retarded persons who meet the law's requirement for criminal responsibility should be tried and punished when they commit crimes. Because of their disabilities in the areas of reasoning, judgment, and control of their impulses, however, they do not act with the level of moral culpability that characterizes the most serious criminal conduct. So because of the mental deficit, they generally are viewed as having less moral culpability for the crimes that they commit. Now there's no question that Judge Reinhardt considered and ticked all the boxes under 3553A when talking about Jonathan. But I believe that there is a distinction between consideration and meaningful consideration. And that's where I think that the district court was lacking. It looked as though, from Judge's comments, he had focused on the fact he mentioned at one point to the defendant, you have no control over yourself. Which again, can't really dispute that. That's true. We see that in all of his conduct while incarcerated. He has numerous violations. Most of them, I think, would fall in the category of minor violations of the jail rules. But then, with respect to the other area that the judge focused on, he placed, I believe, overwhelming emphasis on the need to protect the public. And that's where I believe that the sentence exceeds what would be necessary to protect the public. Given this young man's age... Mr. Byrd, can I ask you a question? Absolutely. Sorry to interrupt you. There's no question from the sentencing transcript that the district court is aware of the factors that you're talking about. So in addition to saying I've considered the mitigation evidence, including the past background, earlier in the transcript, the district court observes very low intelligence level, the physical and sexual abuse the defendant suffered growing up, and the like. Mental health needs, all of that. What more, or where's the legal error in the insufficient consideration? I believe he failed to address, and it comes in in the Hartgrove materials, the indication that with the proper type of training and the type of counseling that was lacking, his prognosis was actually considered to be fair. I don't think that the judge inherent in this sentence is the idea that this defendant, in the judge's mind, cannot be rehabilitated. And my position is he was never really given an opportunity to determine whether he can be rehabilitated or not. The recommendations that were given to his family to provide them with the knowledge and skills to enable Jonathan to progress to the point where he could succeed in life with his deficits were never followed. They recommended that they go in to family counseling and learn how to better deal with him and help him understand his problem. As he reported in his PSI, instead of doing that, his father tied him to a chair and whipped him with extension cords and belts for his misbehavior. In addition to that, in Adkins and its progeny, also looks at how the upbringing, in addition to the deficit, has affected Jonathan. In this case, we have years of sexual abuse from an older neighbor and we also have the beatings that he got from his family. He also reported that he was largely ridiculed by his family. They engaged in a game called House and Nuthouse. It seems very inappropriate and almost a pejorative way of dealing with Jonathan in this case. But inherent in the sentence is the idea that the BOP counseling that could be available to him in a controlled environment, which he's never really had, just simply for whatever reason wouldn't work. It was about 10 years ago that I argued United States versus Presley in this court. A lot of the principles in Presley, even though in that case the district judge was not overruled, but it was sent back for reconsideration. That I guess is what we're asking for today because this puts him long beyond the age of 40, where most people tend to age out of violent crime. And my point is, maybe Jonathan would, maybe he wouldn't, but he has no vehicle to come back when he's 40 and say, look, everything that I got in terms of counseling has worked. I'm ready to reintegrate into society. The punishment needs to be a just punishment for the offense and promote respect for the law. And the sentence that I recommended in the district court of 12 to 15 years, run partially concurrent or totally concurrent with the Cook County sentence, would in fact, I believe, do all of that. And the only last thing I would ask you to consider, and I would ask for a little bit of rebuttal time, is that these co-defendants that were there, even though they're not similarly situated, received those types of sentences. Antoine Fulton, 84 months and 60 months consecutive. Israel Hall, 90 months. Caleb Morales, 108 months on top of the Cook County sentence for attempted murder of 13 years. And then there's Jonathan, the one who is less morally culpable under the principles in Adkins, and he has basically 38 years counting the Cook County sentence run consecutive. There are no other questions. Thank you. Thank you, Mr. Byrd. We will give you rebuttal time. Appreciate it. Thank you. We'll now move Ms. Anderson to you for argument on behalf of the government. May it please the court. My name is Theodora Anderson and I represent the United States. This court should affirm defendant's sentence. The district court did not abuse its wide discretion in imposing a within-guideline sentence. The district court adequately explained its reasoned judgment that a within-guideline sentence adequately balanced the Section 3553A sentencing factors, including the severity of the offenses, which involved a series of violent robberies in which defendant actively participated in, including his use of multiple stolen vehicles, firearms, and his use of physical and threatened force and restraint of victim employees, as well as his extensive criminal background and disciplinary record, and the need to protect the public from the future crimes of this defendant and his lack of self-control, balanced against the mitigating factors presented by the defendant, including the district court's consideration of defendant's diminished capacity, his lack of any kind of mental health treatment or care, and his abusive childhood. Defendant's mere disagreement with the weight that the district court placed upon the various aggravating and mitigating circumstances is not a valid basis to reverse his within-guideline sentence. The district court also did not abuse its discretion in imposing its within-guideline sentence consecutively to defendants entirely unrelated state court offenses. The district court appropriately relied on the Section 3553A factors in explaining its decision, including referencing the very serious nature and circumstances of those offenses, which were for attempted first-degree murder and vehicular hijacking, as well as the need for just punishment. If there are no questions, the government asks that this court affirm defendant's sentence. Thank you, Ms. Anderson. Mr. Byrd, let's go back to you with two minutes of rebuttal. Counsel is right. There is no relationship, actually, between the undischarged county sentence, but it does come before the court under Section 3553 as being a characteristic in history of the defendant that it certainly affects the weight of the sentence that the district court imposed in this case. The district court has the option, and the court basically said it didn't want to denigrate the conduct of the Cook County sentence by reducing it that way, but the vehicle to do it without denigrating the conduct in Cook County is to reduce the 216 months to a point where you achieve the result that you would otherwise intend and leave the consecutive 13-year Cook County sentence intact. With respect to, there's also the 84-month consecutive, the judge had no discretion in that. That had to be imposed. My whole point here is that the defendant has not exhausted his rehabilitative potential. We simply don't know. He's too young. He has not had the benefit of a controlled environment like the one that Hartgrove had suggested with proper counseling could make him rehabilitated, notwithstanding his poor impulse control. Those are all things that are expected with somebody with a 48 IQ. Adkins acknowledged that low impulse control is pretty much an immutable characteristic of somebody with that type of intelligence. In addition, risk aversion is something that is almost non-existent with Jonathan and in most cases of somebody that has that low of an IQ. But again, my point is the parsimony provision could be adhered to with a far lesser sentence than 38 years imposed on a young man who committed these offenses when he was in his very early 20s. Nobody, thank God, was injured. Certainly that was potential, but it didn't happen. His sentence far exceeds those of his co-defendants with no real explanation, even though I acknowledge they're not similarly situated. For all of these reasons, respectfully asking your honors to send this one back for reconsideration by Judge Reinhardt. Thank you. Thank you, Mr. Byrd. You were appointed counsel and you have our great thanks. Thank you. The representation of your client and we had the So you have the thanks of the court. Thank you, Miss Anderson. Thank you, Mr. Kerwin. The case will be taken under advisement.